MARK L. TUFT (SBN 43146)
Mark.Tuft@wbd-us.com
EDWARD L. SEIDEL (SBN 200865)
Ed.Seidel@wbd-us.com
SCOTT M. MCLEOD (SBN 242035)
Scott.McLeod@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Ste. 2750
San Francisco, CA 94111
T:  415-433-1900

Attorneys for Plaintiff
WEST COAST CONFERENCE

Keith P. Carroll (*pro hac vice*)
Benjamin M. McGovern (*pro hac vice*)
**HOLLAND & KNIGHT LLP**
10 St. James Avenue
Boston, MA 02116
Telephone: 617.523.6850
keith.carroll@hklaw.com
benjamin.mcgovern@hklaw.com

Michael Jones (SBN 290660)
**HOLLAND & KNIGHT LLP**
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: 415.743.6900
Fax: 415.743.6910
m.jones@hklaw.com

Attorneys for Defendant,
GRAND CANYON UNIVERSITY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WEST COAST CONFERENCE, an unincorporated association,<br><br>Plaintiff,<br><br>v.<br><br>GRAND CANYON UNIVERSITY, an Arizona nonprofit corporation,<br><br>Defendant. | Case No.: 3:24-cv-08933-CRB<br><br>**JOINT STATUS CONFERENCE STATEMENT**<br><br>Complaint Filed:    December 11, 2024<br>Trial:  None |

Pursuant to Civil L.R. 16-9, Plaintiff WEST COAST CONFERENCE, an unincorporated association ("Plaintiff" or the "WCC"), and Defendant GRAND CANYON UNIVERSITY, an Arizona nonprofit corporation ("Defendant" or "GCU"; collectively with Plaintiff, the "Parties"), respectfully submit this Joint Case Management Statement.

## 1.    JURISDICTION AND SERVICE

Jurisdiction is proper in this court under 28. U.S.C. § 1332 based on complete diversity of citizenship between the WCC and GCU and because the matter in controversy exceeds $75,000. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Additionally, the Parties contractually agreed to venue in the United States District Court for the Northern District of California. No issues exist regarding personal jurisdiction or venue.

## 2.    FACTS

1.    <u>Plaintiff's position</u>:  On or about May 9, 2024, the WCC and GCU entered into an agreement ("Agreement"), pursuant to which GCU agreed to become a member of the WCC according to the terms and conditions of the Agreement as well as the WCC's Constitution. On May 10, 2024, the conditions under the Agreement were met and the Agreement became effective and is binding on the parties. The Agreement provides for GCU to make an Equity Buy-In Payment to the WCC. As a courtesy to GCU, the Agreement allowed GCU to make those payments on a schedule commencing in July, 2024 and concluding in January, 2031. The first two payments were due before January 15, 2025. GCU did make the first payment, received by the WCC on or about July 11, 2024. The Agreement and Constitution of the WCC have certain Withdrawal Provisions, setting forth the parties' obligations if GCU withdraws from the WCC. Specifically, if GCU gives notice of a withdrawal that relates to a withdrawal by GCU for a fiscal year ending on or before June 30, 2031, then GCU is obligated to make a one-time payment to the WCC, not later than 30 days after its written notice of withdrawal, in an amount equal to the remaining unpaid Equity Buy-In Payment. Further, if GCU does not give at least 12 months prior notice of its withdrawal, it is obligated to make a further one-time payment to the WCC. The Agreement does not give GCU the unilateral right to withdraw from the WCC or to

terminate the Agreement, either prior to or after July 1, 2025, without any further obligation to the WCC.  On or about November 1, 2024, GCU publicly announced its decision to join and compete in the Mountain West Conference ("MWC") beginning July 1, 2025 and provided a voicemail message to the WCC's Commissioner. Also on November 1, 2024, GCU provided notice in writing that it was "terminat[ing]" the Agreement. GCU reiterated in writing on November 13, 2024 that it had terminated the Agreement, and stated that it would not compete in the WCC during the next school year (2025-2026). These communications from GCU to the WCC constituted a notice of its withdrawal from the WCC. GCU has joined a different conference, the MWC. GCU has breached its obligations under the Agreement by, among other things, (a) failing and refusing to make the payments due under the Agreement and Constitution and/or (b) by its statements and conduct, expressly and impliedly repudiating the Agreement and refusing to make the Equity Buy-In Payment as it become due.  The factual issues in this case may include various issues related to GCU's timing of its decision to join a different conference, the financial incentives to do so, issues relating to the negotiation of the contract, including what was included and what was excluded as terms, and the performance of the parties until GCU's decision to leave the WCC.

2.     <u>Defendant's position</u>: The WCC is a collegiate athletics conference. GCU is a university located in Arizona whose athletic programs currently compete in the Western Athletic Conference. By letter dated May 9, 2024, the WCC "extend[ed] an invitation to [GCU] to join the WCC as a full member effective July 1, 2025...." (the "Invitation"). The Invitation also repeats in at least four other provisions that GCU's prospective membership in the WCC would not begin until July 1, 2025, and GCU would therefore not become subject to the WCC's Constitution, Bylaws and Administrative Regulations (the "Constitution") until that date. The Invitation also required GCU to make an "Initial Equity Buy-In" pursuant to the Constitution, and further states that the WCC's Presidents' Council "determined" that GCU's Initial Equity Buy-In would be $18 million, payable over fourteen installments.  The parties further agreed that the first of these installments, in the amount of $1.5 million, would be due between July 1 and 15, 2024. Finally, the Invitation describes the consequences for any "failure" of GCU to make

these installment payments, which differed depending on whether the non-payment occurred before or after GCU joined the WCC as a member. If such non-payment occurred *prior* to GCU becoming a member, the Invitation provides that the WCC could sanction GCU by revoking its acceptance into the conference "without any right of refund of prior payments...." If such non-payment occurred *after* GCU became a member, the Invitation provides that the WCC could sanction GCU by, among other things, suspending its member distributions and/or expelling GCU from the conference.

On May 9, 2024, GCU's President countersigned the Invitation and returned it to the WCC. Material to GCU's decision to countersign the Invitation was the parties' mutual belief that Gonzaga University ("Gonzaga") would continue to be a member of the WCC. On July 11, 2024, GCU paid the WCC the first installment payment of its Equity Buy-In in the amount of $1.5 million. Subsequently, on or around October 1, 2024, it became publicly known that Gonzaga intended to leave the WCC to begin competing in a different athletics conference.

By letter dated November 1, 2024, GCU informed the WCC that it sincerely appreciated the invitation to join the conference but had "decided to respectfully decline the invitation at this time" and was therefore "providing written notice that it hereby terminates the May 9, 2024, letter Agreement...." On that same date, GCU also attempted to reach the WCC by phone and left a voice message to similar effect. The WCC responded by putting out a press release and initiating this lawsuit through a "Complaint for Damages" alleging one count for breach of contract. This claim fails because, among other reasons, GCU committed no breach by refusing to make withdrawal payments to a conference it had not yet joined and, in any event, the amounts sought by the WCC represent an unenforceable penalty and/or an unlawful restraint of trade.

3.    **LEGAL ISSUES**

Certain legal issues were addressed by the Parties in the Motion to Dismiss, and relate to whether GCU is required to pay the unpaid amount of the remaining Equity Buy-In fee and the exit fee as set forth in the contract and the WCC Constitution and based on the facts described by the Parties in Section 2, *supra.*, as developed in discovery, and as set forth in their filed papers and

pleadings in this action.  GCU has also raised various affirmative defenses relating to the announcement that Gonzaga University was leaving the WCC and the effect, if any, on the Agreement.

**4.    MOTIONS**

The above referenced Motion to Dismiss was denied by the Court on February 12, 2025. (ECF 30.) Both the WCC and GCU anticipate filing motions for summary judgment and/or motions for partial summary judgment.

**5.    AMENDMENT OF PLEADINGS**

1.    <u>Plaintiff's Position</u>: Given the Court's denial of the Motion to Dismiss and Defendant's filing of its Answer, Plaintiff does not intend to amend the Complaint at this time.

2.    <u>Defendant's Position</u>: GCU requests that the time for amendment of the pleadings remain up to and including August 1, 2025 to account for the possibility that discovery may reveal facts regarding the WCC's knowledge of Gonzaga's departure from the conference that would support additional affirmative defenses and/or a counterclaim.

**6.    EVIDENCE PRESERVATION**

The Parties in this matter are preserving evidence related to this action by, for example, not destroying documents pursuant to a document destruction program and not deleting electronically recorded material.  The Parties discussed the fact that litigation hold letters were issued.

**7.    DISCLOSURES**

The Parties have agreed to exchange their initial disclosures on April 11, 2025.

**8.    DISCOVERY**

Although no discovery has been issued to date between the Parties, the Parties will endeavor to explore the extent to which stipulations may be reached regarding facts and the authenticity and admissibility of documents.

The Parties have not identified any special issues related to electronically-stored information, privilege, phasing, etc., which need the Court's attention.  As such, no special orders related to discovery are required from the Court.

The Parties will further meet and confer regarding discovery and production of documents in this matter, and have exchanged the Court's standard Stipulated Protective Order.

**9.    CLASS ACTIONS**

Not applicable.

**10.    RELATED CASES**

Not applicable.

**11.    RELIEF**

1.    <u>Plaintiff's Position</u>: Plaintiff seeks damages in excess of $18.5 million, including the unpaid amount of the contractual Equity Buy-In Payment, the withdrawal payment obligation pursuant to the contract and the WCC Constitution, and consequential damages resulting from the breach of GCU's payment obligation.  Plaintiff also seeks prejudgment interest and recovery of its reasonably incurred attorneys' fees and costs pursuant to the contractual provision permitting recovery of such fees and costs to the prevailing party.  Defendant raises an issue regarding whether Plaintiff properly pled its damages, but that issue was raised in the Motion to Dismiss, and it was denied.  Defendant's attempt to re-argue this issue below is not allowed under the Federal Rules of Civil Procedure.

2.    <u>Defendant's Position</u>: GCU seeks a defense judgment, and recovery of its reasonably incurred attorneys' fees and costs pursuant to the contractual provision permitting recovery of such fees and costs to the prevailing party. As it relates to the scope of discovery, GCU contends that the WCC's Complaint does not include a prayer for the consequential damages that the WCC now indicates, *supra*, it intends to seek. *See* Compl. (Dkt. No. 1) at p. 4 ("WHEREFORE, WCC prays for judgment against GCU as follows ... For *compensatory* damages according to proof....") (emphasis supplied); *see also Schasa v. AmTrust Bank*, CV 11-01108-RGK, 2011 WL 13220099, at *3 (C.D. Cal. Aug. 2, 2011) ("There are two types of damages: (1) general, and (2) special.  General damages with respect to contract claims are often characterized as those that flow directly from a breach … Special damages are those losses that do not arise directly from a breach, but are secondary or derivative losses … *Under both federal rules and California law, special damages must be specifically pled.*")(emphasis supplied); *Lewis Jorge Constr. Mgmt., Inc. v.*

*Pomona Unified School Dist.*, 34 Cal. 4th 960, 968 (2004) ("Contractual damages are of two types – general damages (sometimes called direct damages) and special damages (sometimes called consequential damages)."). GCU also raised this argument as part of the briefing on its Motion to Dismiss. *See* Grand Canyon University's Reply Memorandum of Points and Authorities in Support of Motion to Dismiss (Dkt. No. 27) at n.2 ("To the extent the WCC seeks some other unspecified form of relief, its Complaint fails to state a plausible claim for a different reason – it makes no effort to plead actual damages proximately caused by Grand Canyon's purported breach.").

**12.     SETTLEMENT AND ADR**

The Parties stipulate to participate in private mediation through the selection of a mutually agreeable mediator.

**13.     CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

Plaintiff has declined to consent to a magistrate judge.

**14.     OTHER REFERENCES**

At this time, the Parties do not believe that this action is an appropriate action to be referred to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.     NARROWING OF ISSUES**

Although no party discovery has been taken to date, the Parties will endeavor to explore the extent to which stipulations may be reached regarding facts and the authenticity of documents. It is also anticipated that issues may be narrowed by summary judgment motion practice.

**16.     EXPEDITED TRIAL PROCEDURE**

The parties do not believe that this case is an appropriate case to be handled on an expedited basis with streamlined procedures.

**17.     SCHEDULING**

Per the Court's standing order, the Parties suggest the following dates for case management:

/ /

/ /

/ /

| EVENT | PROPOSED DATE |
|---|---|
| Last Day to Amend the Pleadings | TBD |
| Mediation Compliance Deadline | August 15, 2025 |
| Non-Expert Discovery Cutoff | October 17, 2025 |
| Expert Disclosures | October 31, 2025 |
| Deadline to File Dispositive Motions | November 21, 2025 |
| Expert Discovery Cutoff | December 5, 2025 |
| Responses to Dispositive Motions | December 19, 2025 |
| Replies to Dispositive Motions | January 16, 2026 |
| Hearing on Dispositive Motions | January 30, 2026 |
| Pretrial Conference | TBD (Plaintiff suggests May 26, 2026; Defendant defers to the Court's preference) |
| Trial Starts | TBD (Plaintiff suggests June 15, 2026; Defendant defers to the Court's preference) |

## 18.    TRIAL

WCC requested a court trial in its Complaint.  GCU requested a jury trial. Assuming a jury trial, the Parties expect the trial of this action to last approximately 7-10 court days.

## 19.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES

The Parties have filed their certification regarding interested entities.

## 20.    PROFESSIONAL CONDUCT

Counsel has reviewed the Guidelines for Professional Conduct for the Northern District of California.

## 21.    OTHER MATTERS

No other matters that may facilitate the just, speedy, and inexpensive disposition of this matter appear to the Parties.

Dated: March 21, 2025

Respectfully submitted,

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Edward L. Seidel*
MARK L. TUFT
EDWARD L. SEIDEL
SCOTT M. MCLEOD

Counsel for Plaintiff
WEST COAST CONFERENCE

Dated: March 21, 2025

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

*/s/ Benjamin M. McGovern*
(as authorized 3/21/2025)
Benjamin M. McGovern (*pro hac vice*)
Keith P. Carroll (*pro hac vice*)
Michael T. Jones

Counsel for Defendant
GRAND CANYON UNIVERSITY

## **FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3) regarding signatures, I, Edward L. Seidel, attest that concurrence in the filing of this document has been obtained.

Date: March 21, 2025

By:    */s/ Edward L. Seidel*
Edward L. Seidel